Whinney *v.* Whinney, Appellant.

Argued March 18, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Elgin E. Weest,* with him *G. Edgar Bowersox,* for appellant.

*Malcolm B. Petrikin,* for appellee.

OPINION BY RENO, J., April 13, 1948:

In this divorce action the husband charged indignities, and the initial and the only weighty responsibility carried by the master was the assessment of the credibility of the parties and their witnesses. He came down on the side of the libellant, and his report, despite numerous exceptions, was approved by the court below. Our independent study of the record has not uncovered any ground upon which a reversal could be predicated.

The record closely follows the familiar pattern of scores of cases in our books, and warrants only the briefest summarization. Both had been married before their wedding in 1938; he was then 46 years old and she was 36; he was a calm and quiet man and she was temperamentally unstable; and they separated in 1941. She agreed pre-nuptially that his children should reside with them, and while her subsequent repudiation of this agreement is probably not an indignity it does cast a revealing light upon her conception of her marital obligations. Soon she began a course of conduct which, continuing

without abatement, made libellant's condition intolerable and his life burdensome. To mention only a few samples of the more outstanding features of her conduct: She called him opprobrious and vulgar names, and, although her verbal concoctions were not notably original, they were sturdy and vivid, and she habitually greeted him with them when he entered their apartment after his day's work was done. Principally to annoy him and to prevent him from sleeping she played the radio loudly, with the additional consequence of bringing their apartment into disrepute with their neighbors. She threatened to take his life with a hammer, and burned refuse in the stove to produce noxious fumes which should annoy him. Her loud and continuous abuse at last was more than their landlady could endure, and she requested them to vacate the apartment. There are other episodes of like character, but no good purpose would be served by transcribing more of this dismal record.

Concerning most of his accusations, she testified: "I don't remember." She made vague and unproven charges about his excessive drinking and sexual demands, and attributed her own actions to a nervous ailment produced by the menopause. But, although the master afforded her ample opportunity, she did not summon as a witness the physician who, she said, had advised her that she was in that stage of life. A witness called by her did testify that libellant had provoked her conduct, but her own testimony repelled that charge. She testified: "Q. Did your husband ever call you any names? A. Not that I know of. Don't know." The record sharply portrays him as the innocent and injured spouse.

The only conclusion which can be drawn from that evidence which the master and the court found credible is that in this household settled hate had supplanted marital love, and that the unhealable estrangement resulted from the indignities which she heaped upon him.

The doctrine of all our cases, which are too well known to the profession to require citation; requires us to hold that the libellant has shown sufficient, and more, to entitle him to an absolute divorce.

Decree affirmed.